UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VINCENT E. BLACKWELL and ANGELA FORD | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 08 C 7257 ) ) Mag. Judge Michael T. Mason |
| ANDREW P. KALINOWSKI, PAWEL RYSZKA, and THE CITY OF CHICAGO, | ) ) ) ) |
| Defendants, | ) ) |

# MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Before the Court are plaintiff Vincent Blackwell ("Blackwell") and defendants Andrew Kalinowski, Pawel Ryszka ("Defendant Officers"), and the City of Chicago's post-trial motions. This case involves claims for false arrest and malicious prosecution brought by plaintiff Blackwell and a claim for unlawful search of a vehicle brought by plaintiff Angela Ford ("Ford"). The case was tried before a jury between May 2, 2011 and May 5, 2011. Before the case was submitted to the jury, defendants filed a motion for judgment as a matter of law on Blackwell's malicious prosecution claim pursuant to Federal Rule of Civil Procedure 50(a). Defendants argued that Blackwell had not demonstrated that the criminal charges against him were terminated in a manner indicative of his innocence. This Court denied defendants' Rule 50(a) motion and the case was submitted to the jury.[1]

---

[1] Blackwell also filed a Rule 50(a) motion for judgment as a matter of law, arguing that he had established as a matter of law that the criminal charges against him were terminated in a manner indicative of his innocence. Plaintiff's motion was denied. Blackwell did not file a

The jury found in favor of Blackwell on both of his claims and against Ford on her unlawful search claim. The jury awarded $5,000 in damages to Blackwell on his false arrest claim and $0 in damages on his malicious prosecution claim. Pursuant to Federal Rule of Civil Procedure 59(a), Blackwell filed a motion for a new trial on the issue of damages only on his malicious prosecution claim. Ford did not file any post-trial motions. Defendants filed a joint motion for a new trial pursuant to Rule 59(a) and for judgment as a matter of law pursuant to Rule 50(b). As discussed more fully below, defendants' joint motion under Rules 59(a) and 50(b) [111] is denied and Blackwell's Rule 59(a) motion [108] is denied.

I. **Defendants' Motion For A New Trial On The False Arrest Claim.**

Under Federal Rule of Civil Procedure 59, in deciding whether to grant a new trial, we must determine whether "the verdict is against the weight of the evidence, the damages are excessive [or insufficient], or if for other reasons the trial was not fair to the moving party." *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996) (quoting *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 516 (7th Cir. 1993)). Defendants argue that they are entitled to a new trial under Federal Rule of Civil Procedure 59(a) because: (1) this Court erred in excluding the criminal court transcript of the hearing and Judge Kirby's ruling on Blackwell's motion to quash his arrest and suppress evidence; (2) this Court erred in refusing to give defendants' proposed jury instruction on the definition of probable cause for false arrest; and (3) this Court erred in refusing to admit Blackwell's felony robbery conviction under Federal Rule of Evidence 609. Defendants

---

renewed motion for judgment as a matter of law under Rule 50(b).

2

claim that they were unfairly prejudiced by each of these errors. We address each of defendants' arguments in turn.

### A. The December 18, 2007 hearing transcript

Defendants argue that this Court erred in excluding a portion of the December 18, 2007 transcript of the hearing on Blackwell's motion to quash his arrest and suppress evidence in the underlying criminal case. "No error in either the admission or the exclusion of evidence ... is grounds for granting a new trial ... or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court *inconsistent with substantial justice*." Fed. R. Civ. P. 61. (Emphasis added). The Seventh Circuit has held that "a trial judge's evidentiary errors satisfy this standard only if a significant chance exists that they affected the outcome of the trial." *Hasham v. California State Bd. of Equalization*, 200 F.3d 1035, 1048 (7th Cir. 2000).

According to defendants, the Honorable John Kirby's ruling in Blackwell's criminal case "makes clear that he did not find that the Defendant Officers had no probable cause to arrest Plaintiff Blackwell, but only quashed his arrest and suppressed evidence that he had narcotics on the night of the incident." Defendants contend that they were unfairly denied the opportunity to counter Blackwell's testimony that a finding of no probable cause was made in his criminal case with the transcript of Judge Kirby's ruling.

Defendants' argument makes no sense. It is true that Judge Kirby did not explicitly state on the record that the Defendant Officers had no probable cause to arrest Blackwell. However, based on our reading of the December 18, 2007 transcript, Judge Kirby clearly granted Blackwell's motion to quash his arrest and suppress

3

evidence because he found that the Defendant Officers had no probable cause to arrest Blackwell. At the December 18, 2007 hearing, Officer Kalinowski testified that he and his partner were driving eastbound on Monroe Street, they saw Blackwell driving westbound, and they pulled him over because he was not wearing a seatbelt. The Defendant Officers testified to the same facts at trial.

Defendants argue that Judge Kirby mistakenly believed that the Defendant Officers were traveling westbound (rather than eastbound), and concede that it can be inferred from the ruling that Judge Kirby did not believe that Officer Kalinowski could have seen whether Blackwell was wearing a seatbelt while driving behind him in the same direction. Whether Judge Kirby misunderstood Officer Kalinowski's testimony is irrelevant here. What is relevant is the fact that Judge Kirby found that there was no probable cause and granted the motion to quash Blackwell's arrest and suppress the narcotics evidence.

Defendants offer no other reason why Judge Kirby granted the motion to quash and suppress. There is nothing in the transcript to suggest that the judge's ruling was based on anything but a finding of no probable cause. Contrary to defendants' suggestion, the transcript does not impeach Blackwell's testimony that a finding of no probable cause was made in his criminal case. Furthermore, both Officer Kalinowski and Officer Ryszka testified at trial that the judge in the underlying criminal case ruled that there was no probable cause for Blackwell's arrest. We find that the exclusion of the hearing transcript is not inconsistent with substantial justice, nor is there a significant chance that it affected the outcome of the trial. *Hasham*, 200 F.3d at 1048. Consequently, defendants are not entitled to a new trial based on this Court's refusal to

admit the December 18, 2007 hearing transcript.

### B. Defendants' proposed jury instruction

Next, defendants argue that they were unfairly prejudiced by this Court's refusal to give their proposed jury instruction on the definition of probable cause for false arrest. Defendants do not argue that the jury instructions given by this Court were inaccurate statements of the law. Instead, they contend that we should have included the following language in the jury instruction on the definition of probable cause for false arrest:

> The fact that the criminal charges against Plaintiff Blackwell were later dismissed does not by itself mean that there was no probable cause at the time of his arrest.

Defendants' proposed jury instruction is based on Seventh Circuit Pattern Jury Instruction 7.06. But defendants modified the bracketed portion of paragraph three of that instruction. The bracketed portion of paragraph three actually states:

> The fact that Plaintiff was later acquitted of [offense in case] does not by itself mean that there was no probable cause at the time of his arrest.

As an initial matter, we note that there is a difference between a dismissal and an acquittal, which constitutes a determination on the merits. Furthermore, the bracketed portion of paragraph three is not mandatory. Indeed, the Committee Comments to Seventh Circuit Pattern Jury Instruction 7.06 explicitly state that the bracketed language "should only be used in appropriate situations." *See* Instruction 7.06, Committee Comment c. In Blackwell's criminal case, Judge Kirby found that the Defendant Officers had no probable cause to arrest Blackwell. Therefore, defendants' proposed jury instruction was not appropriate under the circumstances of this case.

Defendants' reliance on *Humphrey v. Staszak*, 148 F.3d 719, 728 (7th Cir. 1998)

and *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979) is misplaced. Those cases stand for the general proposition that the fact that charges were later dismissed or that a defendant was later acquitted does not necessarily mean there was no probable cause for that defendant's arrest. *Id.* However, unlike in *Humphrey* or *DeFillippo*, in Blackwell's underlying criminal case, Judge Kirby made a finding of no probable cause when he quashed the arrest and suppressed the evidence. Therefore, defendants' proposed jury instruction would have been misleading in this case. We find that the instructions given by this Court were accurate statements of the law and defendants suffered no prejudice as a result of our refusal to give their proposed jury instruction. Thus, defendants are not entitled to a new trial on Blackwell's false arrest claim. *See Hasham*, 200 F.3d at 1051.

### C. Blackwell's robbery conviction

Defendants also argue that this Court erred in refusing to admit Blackwell's felony robbery conviction under Federal Rule of Evidence 609. Blackwell was convicted of felony armed robbery in 1998 and sentenced to ten years in prison. He was released on September 17, 2007, exactly one month before his arrest in this case. Defendants argue that Blackwell's 1998 robbery conviction should have been admitted under Federal Rule of Evidence 609(a)(1), which provides that a prior conviction may be used to attack the credibility of a witness if the conviction is less than ten years old and the crime was punishable by death or more than one year in prison. Fed. R. Evid. 609(a)(1). Under Rule 609(b), evidence of a conviction is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction. Fed. R. Evid. 609(b).

6

Because Blackwell was released in September 2007, his 1998 robbery conviction meets the requirements of Rule 609.  However, admission under Rule 609 is subject to Rule 403, which excludes evidence when its potential for unfair prejudice substantially outweighs its probative value.  Fed. R. Evid. 403.  Therefore, we must balance the potential for unfair prejudice against the probative value of the evidence.

Defendants concede that Rule 609 only covers admission of the 1998 robbery conviction for purposes of attacking Blackwell's character for truthfulness.  They argue that the probative value of the conviction outweighs the prejudicial effect to Blackwell because Blackwell testified extensively about his church-going habits and diligent care for his sick brother.  On its own, we find that the 1998 robbery conviction is simply not probative of the truthfulness of the witness.

Defendants certainly could have tempered Blackwell's testimony - without mentioning his prior conviction - by asking how long he had been going to church or caring for his brother prior to his October 18, 2007 arrest in this case.  Had Blackwell lied about the amount of time he had been going to church or caring for his brother, then the robbery conviction would have been probative of his truthfulness.  But defendants never asked Blackwell any questions about the length of time he had been going to church or caring for his brother.  Under these circumstances, we find that the danger of unfair prejudice substantially outweighed any probative value the robbery conviction offered.  *Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) (citing *United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir. 1992)); *see also, Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 854 (N.D. Ill. 2001) (recognizing that "[a] conviction for comparatively minor drug offenses is less probative of truthfulness than one for perjury

or fraud. On the other hand, the potential for prejudice to [the plaintiff] is great."). As a result, defendants are not entitled to a new trial based on this Court's exclusion of Blackwell's 1998 robbery conviction.

Based on the foregoing, we cannot say that the jury's verdict on Blackwell's false arrest claim is against the weight of the evidence, the damages are excessive or insufficient, or the trial was not fair to the defendants for other reasons. *Briggs*, 93 F.3d at 360. Accordingly, defendant's Rule 59(a) motion for a new trial on Blackwell's false arrest claim is denied.

## II. Defendants' Motion For Judgment As A Matter Of Law On Blackwell's Malicious Prosecution Claim.

Next, we turn to defendants' Rule 50(b) motion for judgment as a matter of law on Blackwell's malicious prosecution claim. Judgment as a matter of law is appropriate if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). "In other words, the question is simply whether the evidence as a whole, when combined with all reasonable inferences permissibly drawn from that evidence, is sufficient to allow a reasonable jury to find in favor of the plaintiff." *Hall v. Forest River, Inc.*, 536 F.3d 615, 619 (7th Cir. 2008).

Defendants argue that this Court should enter judgment as a matter of law in their favor because the granting of Blackwell's motion to suppress evidence and quash his arrest in the underlying criminal case did not terminate the case in a manner indicative of his innocence. In order to succeed on a malicious prosecution claim, the plaintiff must establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor

8

of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Swick v. Liautaud*, 169 Ill.2d 504, 513, 215 Ill. Dec. 98, 662 N.E.2d 1238 (1996). With respect to the second element, a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused. *Id.* (citing *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 45, 44 Ill. Dec. 260, 411 N.E.2d 229 (1980)).

The Supreme Court of Illinois has held that "in the civil malicious prosecution context, the majority rule is that a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi,* unless the abandonment is for reasons not indicative of the innocence of the accused." *Swick*, 169 Ill.2d at 513, 215 Ill. Dec. 98, 662 N.E.2d 1238 (citing Restatement (Second) of Torts §§ 659, 660, 661 (1977)). "The abandonment of the proceedings is not indicative of the innocence of the accused when the *nolle prosequi* is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new criminal proceedings, or the impossibility or impracticability of bringing the accused to trial." *Id.* (citing Restatement (Second) of Torts §§ 660, 661 (1977)).

There is no dispute that immediately after Judge Kirby granted Blackwell's motion to quash his arrest and suppress evidence, he granted the State's motion for a *nolle prosequi*. Blackwell testified at trial that there was a probable cause hearing on December 18, 2007, there was a finding of no probable cause, and his felony drug charge was dismissed. Ford testified at trial that she had testified for Blackwell at his

9

probable cause hearing, the judge found no probable cause, and Blackwell's felony drug charge was then dismissed. Officer Kalinowski also testified at trial that he testified at Blackwell's probable cause hearing, and that at the end of the hearing, the judge made a finding of no probable cause for Blackwell's arrest. Officer Ryszka testified at trial that he attended the December 18, 2007 probable cause hearing, the judge ruled that there was no probable cause for Blackwell's arrest, he quashed the arrest, and Blackwell's felony drug charge was dismissed. In addition, there is no other evidence in the record that supports an inference that the dismissal of Blackwell's criminal case was the result of any of the exceptions set forth in *Swick*.

Based on the circumstances surrounding the entry of the *nolle prosequi*, we find that there was sufficient evidence to allow a reasonable jury to find that the dismissal of Blackwell's criminal case constituted an abandonment of the proceedings in a manner indicative of his innocence. *See Velez v. Avis Rent A Car System, Inc.*, 308 Ill. App. 3d 923, 929, 721 N.E.2d 652 (1st Dist. 1999) (stating that "where the disposition is indicative of a lack of probable cause to bring the earlier case, it will constitute a 'favorable termination' for purposes of asserting a malicious prosecution claim."); *Swick*, 169 Ill.2d at 513-14, 215 Ill. Dec. 98, 662 N.E.2d 1238 (stating that "the circumstances surrounding the abandonment of the criminal proceedings must compel an inference that there existed a lack of reasonable grounds to pursue the criminal prosecution.").[2]

---

[2] We note that we are not persuaded by the case law defendants rely upon in their motion because in those cases, there was either no evidence of the circumstances surrounding entry of the *nolle prosequi*, the court failed to consider the exceptions set forth in *Swick*, or the court relied on *Dobiecki v. Palacios*, 829 F. Supp. 229 (N.D. Ill. 1993), which was decided prior to *Swick*. *See Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997); *Horan v. City of Chicago, et al.*, 2010 WL 2836729 (N.D. Ill. 2010); *Johnson v. Arroyo*, 2010 WL 1195330, * 3

10

Accordingly, defendants' Rule 50(b) motion for judgment as a matter of law on Blackwell's malicious prosecution claim is denied.

### III. Defendants' Motion For Judgment Notwithstanding The Verdict On Blackwell's Malicious Prosecution Claim.

Defendants also argue, in the alternative, that they are entitled to judgment notwithstanding the verdict on Blackwell's malicious prosecution claim. In particular, defendants contend that by awarding Blackwell no damages on his malicious prosecution claim, the jury signified that Blackwell did not prove the damages element of his claim. Defendants also argue that the jury award of no damages has the effect of a special interrogatory as it is inconsistent with the jury's finding of liability on the malicious prosecution claim.

While defendants' motion is entitled a "motion for judgment notwithstanding the verdict," such motions (along with motions for directed verdict) have, since the 1991 amendments to the Federal Rules, been known as motions for judgment as a matter of law under Federal Rule of Civil Procedure 50. Indeed, the Committee Notes to Rule 50 explicitly state that a motion for judgment notwithstanding the verdict should be treated as a motion for judgment as a matter of law in accordance with Rule 50. *See* Committee Notes, Fed. R. Civ. P. 50, 1991 Amendments.

As discussed above, before the case was submitted to the jury, defendants filed a Rule 50(a) motion for judgment as a matter of law on Blackwell's malicious prosecution claim. However, they did not argue that Blackwell failed to prove the

---

(N.D. Ill. 2010); *El Ranchito, Inc. v. City of Harvey*, 207 F. Supp. 2d 814, 823 (N.D. Ill. 2002); *Thomas v. Freidrich*, 2000 WL 562473, at *3 (N.D. Ill. 2000).

damages element of his claim, or that the jury award of $0 in damages was inconsistent with the jury's finding of liability on the malicious prosecution claim. Defendants correctly point out that they could not have made these arguments before the case was submitted to the jury because the jury verdict of $0 in damages had not yet been rendered. Nevertheless, it is black letter law that a post-trial motion for judgment as a matter of law under Rule 50(b) can be granted only on the grounds advanced in a pre-trial motion under Rule 50(a). *Wallace v. McGlothan,* 606 F.3d 410, 418 (7th Cir. 2010); *Production Specialties Group, Inc. v. Minsor Sys., Inc.*, 513 F.3d 695, 699 (7th Cir. 2008) (affirming the district court's holding that a party's failure to first move for judgment as a matter of law at the close of evidence prohibited consideration of a judgment notwithstanding the verdict). Because defendants raise new arguments that were not preserved for review in their Rule 50(a) motion, defendants' Rule 50(b) motion must be denied. *Id.*; *see also*, *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 638 (7th Cir. 2003) (finding that the defendant waived his right to review of his acquiescence claim because it failed to move for directed verdict on that issue).

**IV.    Defendants' Motion For A New Trial On Blackwell's Malicious Prosecution Claim.**

Next, defendants argue, in the alternative, that they are entitled to a new trial on Blackwell's malicious prosecution claim. In particular, defendants claim that they were unfairly prejudiced by this Court's refusal to instruct the jury that dismissal of Blackwell's criminal case was not determinative of whether the Defendant Officers had probable cause to continue a criminal proceeding against him. As discussed above in Part I(B), in the underlying criminal case, Judge Kirby granted Blackwell's motion to quash his

12

arrest and suppress evidence because the judge found that the Defendant Officers had no probable cause to arrest Blackwell. As a result, they had no probable cause to initiate or continue a criminal proceeding against him. Under these circumstances, defendants' proposed jury instruction was not appropriate and it would have been misleading. We cannot say that the jury's verdict on Blackwell's malicious prosecution claim is against the weight of the evidence, the damages are excessive or insufficient, or the trial was not fair to the defendants for other reasons. *Briggs*, 93 F.3d at 360. Accordingly, defendants' Rule 59(a) motion for a new trial on Blackwell's malicious prosecution claim is denied.

**V.    Plaintiff Blackwell's Motion For A New Trial On Damages On His Malicious Prosecution Claim.**

Plaintiff Blackwell argues that this Court should grant him a new trial on the issue of damages only on his malicious prosecution claim because the jury's award of $0 in damages on that claim was against the manifest weight of the evidence. In ruling on a motion for a new trial, "the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County, Ill.*, 2011 WL 1518878, *1 (7th Cir. 2011) (citations omitted). A new trial is appropriate if, after evaluating the evidence, the district court is of the opinion that the verdict is against the manifest weight of the evidence. *Id.*

Blackwell was arrested on October 17, 2007 and incarcerated until December 18, 2007, when the felony drug charge against him was dismissed. Blackwell testified at trial that during his two-month incarceration, he could not be with or care for his brother,

13

who was dying of lung cancer.  He also testified about his relationship with plaintiff Ford.  Blackwell explained that on the night of his arrest, he had been dating Ford for about four or five months.  He said they were having heated discussions about their relationship that night and things were "blowing out of control" over whether he was going to continue living with Ford at her residence.  Ford testified that on the night of the arrest, her relationship with Blackwell was on shaky grounds and that they were arguing about family issues as they drove around that night.  Blackwell eventually asked Ford to take him back to his family's home on Monroe Street, where Blackwell's sister and some of his other relatives resided.  Blackwell testified that his relationship with Ford did not work out because she blamed him for what happened on the night of his arrest.

Blackwell argues that it is inconceivable, given the losses he suffered during his incarceration, that an award of $0 in damages on the malicious prosecution claim was anything but an error.  We disagree for a number of reasons.  First, Blackwell strategically avoided testifying about the emotional impact of his two-month incarceration because he did not want his prior robbery conviction and incarceration to be admitted.  Therefore, the jury heard nothing about how the loss of freedom affected Blackwell.

Second, the jury easily could have found that Ford and Blackwell's relationship ended for reasons other than the malicious prosecution.  The evidence before the jury demonstrated that the relationship was in serious trouble prior to Blackwell's arrest.  Furthermore, both Blackwell and Ford testified that Ford visited him weekly while he was incarcerated.  And despite Blackwell's claim that Ford blames him, it is clear that Ford bears no ill-will towards Blackwell.  She testified on his behalf at both his probable

14

cause hearing and at trial.

Third, the jury may have questioned some of Blackwell's testimony about his brother because it was extremely emotional and at times, inconsistent with Ford's testimony. Blackwell testified that he went over to his brother's house "all of the time" because his brother was sick. Blackwell claimed that Ford went with him every time he went to see his brother because his brother really liked her. However, Ford testified that she had only visited Blackwell's brother once before the night of the arrest.

Fourth, there are several unexplained holes or inconsistencies in Blackwell's story about the events leading up to his arrest on October 17, 2007. For instance, it is unclear why Blackwell and Ford were aimlessly driving around for several hours while they were arguing that night. It is also unclear how they ended up at his family's home at 4320 West Monroe. Blackwell failed to explain why he did not go into the house with Ford despite the fact that he testified he was staying there that night. Blackwell also testified that he had Officer Kalinowski make a number of phone calls on his cell phone in the hopes that Ford would come out of the house while he was stalling. But Blackwell never asked Kalinowski to call the home phone at 4320 West Monroe even though he knew Ford and Michelle Meyers were inside. Ford testified that there was a phone in the kitchen.

Fifth, Blackwell was impeached on numerous occasions during cross examination. For example, Blackwell was impeached by prior inconsistent statements relating to conversations he had with the Defendant Officers when he was arrested, the status of his relationship with Ford, where he was living at the time of his arrest, and whether drugs are sold on the 4300 block of West Monroe.

15

Based on Blackwell's demeanor at trial, the number of times he was impeached, and his testimony concerning the events leading up to his arrest, this Court finds that Blackwell was not a credible witness. After evaluating all of the evidence and assessing Blackwell's credibility, we find that the jury's verdict of $0 in damages on the malicious prosecution claim is not against the manifest weight of the evidence. The jury certainly could have believed some, but not all, of Blackwell's testimony and decided to award him $0 in damages as a result.

Moreover, it is possible that the jury would have awarded nominal damages if they had known that was an option. Indeed, "it is not uncommon for a jury to decline to award compensatory and punitive damages, choosing instead to award the plaintiff nominal damages." *Orlowski v. Eriksen*, 2009 WL 5183226, *7 (N.D. Ill. 2009) (citing *Briggs v. Marshall*, 93 F.3d 355 (7th Cir. 1996) (jury awarded nominal damages of $1 but failed to award compensatory or punitive damages)). In this case, however, the parties agreed that the jury would not receive an instruction on nominal damages. Defendants had proposed a jury instruction on nominal damages, plaintiffs objected, and ultimately, the parties stipulated that the nominal damages instruction would be withdrawn. [Docket # 97]. Consequently, neither party is in a position to complain. *Chestnut v. Hall*, 284 F.3d 816, 819-20 (7th Cir. 2002) (stating that "failure to challenge a jury instruction in a civil case results in a waiver."); Fed. R. Civ. P. 51(d)(1).[3]

The fact that the jury decided against awarding compensatory damages and was unaware of their ability to award nominal damages cannot now be used as grounds for

---

[3] We note that neither party argues that this Court committed a plain error in the instructions under Rule 51(d)(2).

16

a new trial. *Orlowski*, 2009 WL 5183226, *7. The jury was entitled to award Blackwell the amount they deemed necessary to compensate him for any injuries he sustained as a result of the malicious prosecution. They found that amount to be $0 and this Court finds no reason to disturb their verdict. Accordingly, Blackwell's Rule 59(a) motion for a new trial on his malicious prosecution claim is denied.[4]

## VI. Conclusion

For the reasons stated above, defendants' joint motion under Rules 59(a) and 50(b) is denied. Blackwell's Rule 59(a) motion is denied. It is so ordered.

**ENTERED:**

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: July 25, 2011**

---

[4] In light of our finding that the jury's verdict is not against the manifest weight of the evidence, we need not address whether a new trial on damages only is appropriate.