**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VINCENT E. BLACKWELL and ANGELA FORD,** | ) ) ) | |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | **No. 08 C 7257** |
| **ANDREW KALINOWSKI, P.W. RYSZKA (Star No. 12561), KEVIN BOYER, TIM E. WOOD, SERGIO LAUREL, MIRABEL CARDONA, and CITY OF CHICAGO,** | ) ) ) ) ) ) | **Magistrate Judge Michael T. Mason** |
| **Defendants.** | ) ) | |

**Memorandum Opinion and Order**

Michael T. Mason, United States Magistrate Judge:

Before the Court is plaintiff Vincent E. Blackwell's ("plaintiff" or "Blackwell")

Petition and Memorandum In Support of Petition for Attorneys' Fees and Non-Taxable

Costs [140], to which the City of Chicago (the "City") and the individual defendants

object [156]. Plaintiff is seeking to recover attorney's fees as the "prevailing party"

pursuant to the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988. Also pending is

Plaintiff's Motion For An Order Adding to the Attorney's Fee Petition Additional Time

Spent on Researching, Preparing and Defending the Fee Petition and Bill of Costs

[172]. For the reasons set forth below, we grant Blackwell's petition and motion in part.

**I.      Background**

At approximately 3:00 a.m. on October 17, 2007, Blackwell was sitting in a

vehicle that belonged to plaintiff Angela Ford ("Ford"), while Ford ran into a relative's

home to use the restroom. According to the complaint, defendants Andrew Kalinowski and Pawel Ryszka, both officers with the Chicago Police Department, approached the vehicle and ordered Blackwell out of the car. The officers then proceeded to search Blackwell and search Ford's vehicle without permission or probable cause. Blackwell was handcuffed and arrested and Ford's vehicle was seized. Blackwell alleges that after he was taken to the police station, defendants wrongfully charged him with felony drug charges and traffic charges. Blackwell spent two months incarcerated before the charges against him were dropped.

Blackwell and Ford subsequently filed this lawsuit, asserting claims against the City, as well as the individual officers who were involved in the traffic stop and Blackwell's arrest. In their six count complaint, Blackwell and Ford asserted claims for false arrest, malicious prosecution, unconstitutional search of a vehicle, unconstitutional seizure of a vehicle, due process violations and conversion. The District Court granted defendants' motion to dismiss in part, dismissing three of the six claims. Blackwell's claims for false arrest and malicious prosecution and Ford's claim for unlawful search of a vehicle proceeded to a jury trial. After a four day trial, a jury found in favor of Blackwell on both of his claims and against Ford on her unlawful search claim. The jury awarded Blackwell $5,000 in compensatory damages on his false arrest claim, and $0 in damages on his malicious prosecution claim.

After receiving a favorable verdict, Blackwell filed his petition for fees on September 17, 2011, requesting $224,319 in attorney's fees as the "prevailing party" pursuant to the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988. On December 23, 2011, Blackwell filed a motion to add to his fee petition additional attorney's fees

2

incurred in preparing the fee petition. That motion seeks an additional $50,931.40 in attorney's fees, bringing the total amount sought to $275,250.40. For the reasons set forth below, we grant plaintiff's fee petition and motion in part, and award him $107,911,13 in attorney's fees.

## II.    Discussion

Generally, under the American Rule, a party must pay its own attorney's fees and expenses unless there is express statutory authorization to the contrary. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975); *see also Perdue v. Kenny*, --- U.S. ----, 130 S.Ct. 1662, 1671 (2010) (citing *Hensley v. Eckerkart,* 461 U.S. 424, 429 (1983)). Pursuant to 42 U.S.C. § 1988, the Court may award the "prevailing party" in certain civil rights actions "a reasonable attorney's fee as part of the costs." The purpose of § 1988 is to "ensure effective access to the judicial process for persons with civil rights grievances." *Hensley*, 461 U.S. at 429 (quoting H.R. Rep. No. 94-558, p. 1 (1976)). A "reasonable fee" is determined by the facts of the case, using the following factors: the time and labor required; the novelty and difficulty of the questions; the skill required to perform the legal service properly; the preclusion of employment by the attorney due to acceptance of the case; the customary fee; whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the amount involved and the results obtained; the experience, reputation, and ability of the attorneys; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. *Hensley*, 461 U.S. at 430 n.4.

In his petition, Blackwell seeks to recover fees for two attorneys, Irene Dymkar and Jim Bowers, and one paralegal, Chantelle Hill. He asserts that he is entitled to $494

3

per hour for Ms. Dymkar's time (which amounted to 383.8 hours for litigating the merits

of the case and 103.1 hours for the preparation of the fee petition), $494 per hour for Mr.

Bowers' time (58.7 hours), and $125 per hour for Ms. Hill's time (42.4 hours).

Defendants agree that Blackwell is entitled to fees as a "prevailing party" under § 1988,

but they object to the amount sought.  In particular, defendants dispute the

reasonableness of the hourly rates listed in the fee petition, as well as the number of

hours expended on the case.  We address each of defendants' arguments below.

### A.  Reasonable Hourly Rate for Attorneys Ms. Dymkar and Mr. Bowers

 In order to determine a reasonable fee, we use the lodestar method, "multiplying

the number of hours reasonably expended on the litigation...by a reasonable hourly rate."

*Pickett v. Sheridan Health Care Ctr,* 664 F.3d 632, 639 (7th Cir. 2011) (citing *Hensley*,

461 U.S. at 433).  The party requesting fees bears the burden of establishing its

entitlement to an award and documenting the appropriate hours expended and hourly

rates.  *Hensley*, 461 F.3d at 433.  "There is a strong presumption that the lodestar

calculation yields a reasonable attorneys' fee award."  *Pickett,* 664 F.3d at 639.  Once

the court has established the lodestar, "the court may adjust it to account for factors not

subsumed by the lodestar calculation."  *Id.* at 640.

Defendants first argue that plaintiff is not entitled to recover an hourly rate of $494

for each of his attorneys because this rate is not reasonable given Ms. Dymkar and Mr.

Bowers' experience, skill and reputation.  In order to determine a reasonable hourly rate,

we look at "the market rate for the services rendered."  *Id.*  The market rate is the "rate

that lawyers of similar ability and experience in their community normally charge their

paying clients for the type of work in question." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999); *Williams v. Z.D. Masonry, Corp.*, No. 07 C 6207, 2009 WL 383614, at *1 (N.D. Ill. Feb. 17, 2009). The attorney's actual billing rate for comparable work is "presumptively appropriate" to use as the market rate. *Denius v. Dunlap,* 330 F.3d 919, 930 (7th Cir. 2003). The next best evidence of an attorney's market rate is "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Spegon*, 175 F.3d at 555. Of these two alternatives, the Seventh Circuit has indicated "a preference for third party affidavits that attest to the billing rates of comparable attorneys." *Pickett*, 664 F.3d at 640.

Here, Blackwell is seeking an hourly rate of $494 for his attorneys, and in support of this rate, he submitted the affidavits of Ms. Dymkar and Mr. Bowers. In these affidavits, Ms. Dymkar and Mr. Bowers explain their education, experience, and accomplishments, and attest that the rate sought is an appropriate billing rate for this civil rights case. (*See* Pl.'s Pet. at Ex. 22-23.) Neither reports that they have received this hourly rate in prior civil rights matters. "An attorney's own self-serving affidavit attesting to a market rate... is simply inadequate." *Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at *4 (N.D. Ill. Mar. 18, 2009). Accordingly, the Court gives very little weight to Ms. Dymkar and Mr. Bowers' attestations that $494 is a reasonable rate for them.

Blackwell has also submitted the affidavits of a number of other Chicago attorneys, explaining their own experience and accomplishments. In some cases, these attorneys also attest to their own hourly rate, or state their belief that $494 is a reasonable rate for Ms. Dymkar and Mr. Bowers' work on this case. We find, however,

5

that the attestations contained in these affidavits are not persuasive because Ms. Dymkar and Mr. Bowers do not share the experience, skill, success or reputation as many of these attorneys.

For example, Blackwell submitted the affidavit of attorney Jon Loevy. According to this affidavit, Mr. Loevy graduated in the top 1% of his class at Columbia Law School. He serves as an instructor at the University of Chicago law school, and he has received recognition from a number of legal publications. The Honorable James Holderman praised Mr. Loevy's advocacy skills in a 2003 decision, noting that his "overall performance ranks among the finest displays of courtroom work by a plaintiffs' lead trial counsel...in several years." In his affidavit, Mr. Loevy states that he has won more than $100 million in jury verdicts, which includes twelve separate jury verdicts of $1 million or more. He has won 13 out of the last 16 cases he has argued before the federal appellate courts. Notably, Mr. Loevy states that multiple courts have approved his billing rate at just $425 an hour in contested fee petitions.

In contrast, Ms. Dymkar and Mr. Bowers do not possess the experience, skill, success, or reputation that Mr. Loevy has attained in his career. Although Ms. Dymkar graduated from law school in 1977, it appears that at the time of this trial Ms. Dymkar had practiced civil rights litigation for, at the most, eight years. Similarly, Mr. Bowers graduated from law school in 1977, but has only concentrated on civil rights cases for the past six years. With respect to their success in this field, Ms. Dymkar and Mr. Bowers state that they recently settled a jail death case for $1 million and that they recently won three jury trials in federal court. In addition to the $5,000 verdict in this case, Ms. Dymkar and Mr. Bowers obtained a $53,500 verdict in one case (*Ragland v. Ortiz*, 08-

6

6157) and a $60,000 verdict in the other (*Swanigan v. Trotter*, 07-4749). Although they won three jury trials in 2011, the City points out that Ms. Dymkar and Mr. Bowers have been unsuccessful in at least seven civil rights jury trials in recent years. And although Ms. Dymkar boasts that she has argued a First Amendment case before the Seventh Circuit, that appeal was unsuccessful. Thus, comparing this experience with that of Jon Loevy, it is clear to us that an hourly rate of $494 (considerably *higher* than Mr. Loevy's rate of $425) is not appropriate here.

The affidavits of the other attorneys submitted by Blackwell also lack the substance necessary to support Blackwell's proposed rate. Ken Flaxman, who has been practicing civil rights litigation for 30 years and has argued five cases before the United States Supreme Court, states that he has received the rate of $650 an hour as part of a settlement. He does not attest that he has been awarded this hourly rate by a Court. In any event, Ms. Dymkar and Mr. Bowers' experience, success and reputation do not compare to Mr. Flaxman's.

Similarly, the affidavits of Janine Hoft and Matthew Robison add little value to our analysis. They merely summarize their own experience and state their belief that $494 is a reasonable rate for Ms. Dymkar and Mr. Bowers, without actually stating their own billing rates. *See Edwards*, 2009 WL 742871, at *4 (affidavits were "not very useful" when they simply asserted that a proposed rate was reasonable based on the affiants' experience, without attesting to any fee awards they had received or rates they charged paying clients). Blackwell has also attached the affidavit of Edward Fox, who has been practicing civil rights litigation since 1986 and whose current rate is $400 an hour, and the affidavit of David Cerda, who was recently awarded fees at a rate of $425 an hour.

7

Both of these attorneys have more civil rights litigation experience than Ms. Dymkar and Mr. Bowers and, more importantly, neither submits that they have received Blackwell's proposed rate. Blackwell also submitted the affidavit of Amanda Antholt. Ms. Antholt has been practicing civil rights litigation for 9 years and serves as an adjunct law professor. She was recently awarded $325 an hour for her work. It is our opinion that Ms. Antholt's experience is most comparable to Ms. Dymkar and Mr. Bowers and her most recent award is notably less than the $494 Blackwell is requesting.

Throughout his petition, Blackwell places undue emphasis on the fact that his attorneys graduated from law school in 1977 in order to justify his proposed hourly rate. For example, plaintiff relies on *Entertainment Software Ass'n v. Blagojevich,* No. 05 C 4265, 2006 WL 3694851 (N.D. Ill. Aug. 9, 2006), noting that the Court in that case awarded $585 an hour for a 1979 law school graduate and $425 an hour for a 1996 graduate. But in our lodestar analysis, we not only look to the year an attorney graduated from law school; instead, we also look at the rates of "attorneys of similar abilities and experience and... the attorneys' *credentials* to determine a reasonable hourly rate." *Lee vs. City of Chicago,* No 07 C 2035, 2008 WL 5377798, at *1 (N.D. Ill. Dec. 18, 2008) (emphasis added); *see also Spegon*, 175 F.3d at 555. In *Entertainment Software*, the attorneys worked for Jenner & Block and established that their clients actually paid these rates. The court in that case highlighted the impressive credentials of the attorneys and noted that Jenner & Block generally receives above average rates because "[c]lients consider their attorneys to be better than average and pay them accordingly." *Entertainment Software,* 2006 WL 3694851, at *5. Therefore, the rates awarded in *Entertainment Software* have no bearing here.

8

Plaintiff also filed a supplemental memorandum [177] to inform this Court about a recent decision awarding fees at a rate of $425 an hour for attorney Blake Horwitz. (*See Smith v. City of Chicago,* 09 C 4754, Docket No. 229.) Again, Ms. Dymkar and Mr. Bowers' experience and expertise do not compare. In that case, Mr. Horwitz filed an affidavit attesting that he had tried 35 cases, had practiced civil rights law since 1991, recovered a $28 million verdict against the City, and settled another case against the City for $1.8 million. The fact that Mr. Horwitz was awarded $425 for his work actually undermines, rather than bolsters, Blackwell's position that an hourly rate of $494 is reasonable here.

Finally, Blackwell relies on the Laffey Mattrix to support his proposed hourly rate. The Laffey Matrix, created by the U.S. Attorney's Office in Washington D.C. to avoid disputes such as this one, provides guidelines for appropriate hourly rates. While courts in the Northern District have relied on the Laffey Matrix in conjunction with other evidence of hourly rates, *see Warfield v. City of Chicago*, 733 F. Supp. 2d 950 (N.D. Ill. 2010), it has "not been formally adopted in the Seventh Circuit and its rates appear significantly higher than those typically awarded in this district." *Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010); *see also Pickett,* 664 F.3d at 650 (noting that "district courts that have considered the Laffey Matrix have viewed it with differing levels of praise and skepticism"). Accordingly, we afford little weight to the Laffey Mattrix.

For all of these reasons, we agree with defendants that $494 is not an appropriate hourly rate for these two attorneys. After a review of their experience and their credentials, as well as recent case law in this Circuit, we find that an hourly rate of $325

is appropriate for Ms. Dymkar and $295 is appropriate for Mr. Bowers. *See, e.g.,*

*Edwards*, 2009 WL 742871, at *4 ($400 hourly rate is reasonable for attorney who has

handled over 150 civil rights cases over more than two decades, lectures CLE classes

and has received numerous professional awards and distinctions); *Lee*, 2008 WL

5377798, at *1 ($325 hourly rate is reasonable for lead counsel in civil rights case);

*Alcazar-Answelmo v. City of Chicago*, No. 07 C 5246, 2011 WL 3236024, at *7 (N.D. Ill.

July 27, 2011) ($350 hourly rate was reasonable for attorney with more than 25 years of

experience and $300 was reasonable for an attorney with 10 years experience in federal

civil rights litigation). This decision is based on the fact that at the time of the trial, Ms.

Dymkar had specialized in civil rights litigation for approximately eight years and Mr.

Bowers had specialized in this field for only six years. In addition, neither attorney has

achieved the level of success necessary to warrant a higher rate. Having determined a

reasonable hourly rate, we now turn to the number of hours these attorneys expended

litigating this case.

### B. Reasonableness of the Number of Hours Expended

According to the fee petition, plaintiff's two attorneys expended a total of 442.5

hours from the onset of this litigation through the trial and post-trial motions.[1] It is our job

to determine whether these hours were reasonably expended. "An hour reasonably

expended is an hour that is not excessive, redundant or otherwise unnecessary."

*Williams*, 2009 WL 383614, at *1. Where a party has "failed to exclude or otherwise

tailor unreasonable time entries, the district court may reduce the number of hours

---

[1]We will address the time billed for work on the fee petition separately. *See*
Section II.D, *supra.*

accordingly." *Lizak v. Great Masonry,* No. 08 C 1930, 2010 WL 3001906, at *4 (N.D. Ill. July 29, 2010). We may also reduce the number of hours where the description of the work performed is inadequate. *Lopez v. City of Chicago,* No. 01 C 1823, 2007 WL 416805, at *5 (N.D. Ill. Nov. 20, 2007).

## 1. Clerical Work

Defendants first argue that certain tasks performed by Ms. Dymkar were clerical or paralegal in nature and should not be billed at attorney rates. "Courts have found organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters to be clerical." *Delgado v. Village of Rosemont,* No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006); *see also Goodale v. George S. May Int'l Co,* No. 09 C 7848, 2010 WL 2774013, at *4 (N.D. Ill. July 14, 2010). We agree with defendants that plaintiff's petition includes some time entries "that are easily delegable to non-professional assistance." *Spegon*, 175 F.3d 553. We find that the following entries are clerical in nature and therefore, Ms. Dymkar's time for these entries will be disallowed:

| 03/19/08 | Telephone conference with criminal court reporter | 0.3 hrs |
| 06/26/08 | Order and obtain criminal court file | 1.4 hrs |
| 12/18/08 | Draft court cover sheet | 0.3 hrs |
| 12/21/09 | Telephone conference with court reporter | 0.3 hrs |
| 05/01/11 | Organize file, deposition transcripts | 1.7 hrs |

*See, e.g.*, *Delgado*, 2006 WL 3147695, at *2 (disallowing time updating database, phone calls with clerks, filing documents); *Pace vs. Pottawattomie Country Club Inc.,* No. 07 C

11

347, 2009 WL 4843403, at *12-13 (N.D. Ind. Dec. 11, 2009) (disallowing time entries for clerical tasks such as drafting civil cover sheets). Accordingly, her request for fees will be reduced by 4 hours.

In addition, we find that other time entries, while not clerical or secretarial in nature, should have been delegated to a paralegal. As such, Ms. Dymkar's time for the following entries will be billed at a paralegal rate of $100.[2]

| 12/18/08 | Draft attorney appearance | 0.4 hrs |
|----------|---------------------------|---------|
| 12/18/08 | Draft summonses (7) | 1.4 hrs |
| 04/20/09 | Draft notice of motion | 0.3 hrs |
| 05/22/09 | Telephone conference with process investigator | 0.3 hrs |
| 05/29/09 | Letter to process investigator | 0.4 hrs |
| 10/06/09 | Draft deposition notice | 0.6 hrs |
| 10/31/09 | Draft request for Sec. of State driving abstract | 0.4 hrs |
| 11/02/09 | Draft subpoena to Cook County State's Atty | 0.6 hrs |
| 11/04/09 | Draft subpoenas | 0.3 hrs |
| 01/18/10 | Draft deposition notice | 0.5 hrs |
| 07/02/10 | Draft subpoena to U.S. Cellular | 0.5 hrs |
| 04/12/11 | Draft notice of motion | 0.3 hrs |
| 04/22/11 | Draft trial subpoena | 0.4 hrs |
| 04/27/11 | Draft trial subpoena | 0.3 hrs |
| 04/28/11 | Draft attorney appearance | 0.4 hrs |
| 04/28/11 | Draft trial subpoena | 0.3 hrs |
| 06/27/11 | Draft notice of motion | 0.3 hrs |

---

[2]Although plaintiff has requested an hourly rate of $125 for paralegal work in this case, we find that $100 is more appropriate. *See* further discussion in Section II.C, *supra*.

| 06/27/11 | Draft notice of motion | 0.3 hrs |
| 08/15/11 | Draft notice of motion | 0.3 hrs |

*See, e.g., Jablonski v. Astrue*, No. 09 C 3398, 2011 WL 824601, at *2 (N.D. Ill. Mar. 3, 2011) (finding that it is appropriate for attorney to delegate drafting certain pleadings such as attorney appearances, summonses and civil cover sheets to legal assistant); *Goodale,* 2010 WL 2774013, at *4 (disallowing time attorney spent on paralegal work such as emails confirming information with clients, emailing and receiving documents, downloading and uploading filings). This amounts to 8.3 hours, which should be billed at $100 per hour.

Defendants also argue that certain time spent preparing the bill of costs should have been delegated to a paralegal. On 05/16/11 and 05/18/11, Ms. Dymkar purportedly expended 2.0 and 2.6 hours respectively on "prepare bill of costs and obtain invoices." While we agree that obtaining invoices would be appropriate work for a paralegal, it is not unreasonable for an attorney to be involved in preparing the bill of costs. Because we cannot determine how much of Ms. Dymkar's time was spent obtaining the invoices alone, we will cut this time in half, and reimburse plaintiff for 2.3 hours at Ms. Dymkar's rate and 2.3 hours at the paralegal rate.

With respect to the three remaining entries that defendants assert are clerical or paralegal in nature, we disagree. These entries include Ms. Dymkar's time for a "telephone conference with U.S. Cellular," "draft document request to U.S. Cellular," and "draft FOIA request to OEMC." We find that these tasks can require legal expertise and it was not unreasonable for Ms. Dymkar to handle these herself, rather than delegating

13

them to her paralegal.

## 2. Excessive Time

Defendants also argue that some of Ms. Dymkar's time was excessive and should therefore be disallowed. Plaintiff concedes that one of these entries was an error - thereby reducing Ms. Dymkar's time by 1.0 hour. We agree with defendants that some of Ms. Dymkar's time for certain tasks was excessive. First, Ms. Dymkar spent 1.1 hours on 03/25/2011 and 1.0 hour on 04/12/11 on two routine motions for an extension of time. Both motions were less than two pages. In addition, on 06/27/11, Ms. Dymkar spent 1.0 hour on a routine motion to correct a statement in her motion for new trial. This motion was also less than two pages. We find that Ms. Dymkar's time on these three motions was excessive and we will reduce her time to 0.5 hours for each motion. This will reduce her total time by 1.6 hours.

Defendants also challenge the time Ms. Dymkar spent on 05/06/11 (after the verdict) described as "telephone conference with A. Ford. - 0.5 hours." Ms. Ford was not a prevailing party, and we will not allow reimbursement for this time because any time spent on post-trial matters unrelated to plaintiff's success is not compensable. *Goodale,* 2010 WL 4774013, at *6 ("[t]ime spent on post-judgment correspondence is recoverable only if it is related to the plaintiffs' success").

Defendants also object to Ms. Dymkar's time entries for three letters to Erica Hokens, counsel for defendant (06/08/09 for 0.4 hours, 07/27/09 for 1.2 hours, 01/18/10 for 0.5 hours). Defendants have attached each of these letters to their response brief and argue that the time Ms. Dymkar purportedly spent on each is excessive. With respect to the first of these entries, we find that 0.4 hours is reasonable for a short letter

regarding service issues.  In addition, the 07/27/09 letter was plaintiff's demand letter, and while it was brief, we find that 1.2 hours was a reasonable amount of time to spend putting plaintiff's demand together.  However, the 01/18/10 letter was eight lines long and addressed only the scheduling of depositions; therefore, we agree with defendants that .5 hours was slightly excessive.  We find that 0.3 is a reasonable entry for this task.

Similarly, defendants assert that Ms. Dymkar's time is excessive for an entry dated 06/15/09, which states: "Review defendants' motion to join motion - 0.3 hrs."   This was the motion of two defendants seeking leave to join in the other defendants' motion to dismiss.  The motion is one-half of a page long and we find that Ms. Dymkar should have spent 0.1 hours on this task.

Defendants also object to 6.3 hours Ms. Dymkar spent on 06/23/10 and 06/24/10 abstracting the deposition of defendant Kalinowski.  Mr. Kalinowski's deposition was 100 pages, and therefore, we agree that this is excessive and we will reduce Ms. Dymkar's time for this task to 3.0 hours.  Finally, defendants assert that it was excessive for Ms. Dymkar to spend 2.3 hours over the course of three days (03/22/11, 03/25/11 and 03/30/11) "drafting witness list", "determining trial strategy" and "reviewing witness list." We disagree with defendants regarding these entries.  As defendants point out, there were 10 witnesses and this is not an unreasonable amount of time for counsel to spend analyzing the case to determine which witnesses to call at trial.

### 3. Redundant or Vague Time Entries

Defendants also object to a number of time entries as being vague or redundant. First, in seventeen entries, Ms. Dymkar states: "Review file, determine litigation strategy and plan," with no further detail, and her time for these entries ranges from 0.2 hours to

15

1.3 hours for a total of 8.4 hours. In addition, defendants object to 3.2 hours on 04/01/11 for "abstract depositions" with no further explanation. Defendants are correct that the court may reduce the award where the description of the work performed is inadequate. *Lopez*, 2007 WL 4162805, at *5 ("the applicant for fees must provide sufficient description of the type of work performed."). Because we cannot determine from these entries what exactly Ms. Dymkar's work entailed, we will disallow half of her time, thereby reducing her hours by 5.8 hours. *See, e.g., Thompson v. City of Chicago,* No 07 C 1130, 2011 WL 2837589, at *7 (N.D. Ill. Feb. 7, 2011); *Entertainment Software*, 2006 WL 3694851, at *9 ("[w]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage").

Defendants also take issue with six entries that read "review court order" and range from 0.2 hours to 0.3 hours. Defendants assert that these entries are vague or redundant because there is no further detail about which court order, and in some cases, they are repetitive of other time entries in the same time frame. We agree with defendants that some of this time should not be allowed. Because she does not specify which court order was reviewed on these dates, we will assume that she is referring to any order that was entered on the date of the time entry. On 06/09/09, 06/24/09, 07/12/10 and 10/18/10, Ms. Dymkar recorded 0.2 hours for "review court order" and, on each of these dates, the court entered very brief minute orders (ranging from three to nine lines). We find that if Ms. Dymkar needed to record *any* time for her review of these brief orders, 0.1 hours is more appropriate. In addition, Ms. Dymkar recorded 0.2 hours

16

on both 07/08/10 and 10/12/10 for "review court order" but there were no orders entered on either of these dates, and this time will be disallowed. We will also disallow Ms. Dymkar's 10/06/09 entry for "review court docket and judge's webpage - 0.2 hours," as it is duplicative of her previous entry on 09/24/09. After these adjustments, Ms. Dymkar's time is reduced by 1.0 hours.

Finally, we agree with defendants that plaintiff should not be reimbursed for all of Ms. Dymkar and Mr. Bowers' time on 05/06/11, which was the day the jury returned a verdict. Both attorneys have the following entry for this date: "Trial - 3.0 hours." Plaintiff's counsel has not provided any more detail in these entries, and time waiting for a verdict is not reimbursable. *Warfield*, 733 F. Supp. 2d at 960 (disallowing time spent waiting for the verdict as those hours were not "reasonably expended"); *Thompson*, 2011 WL 2837489, at *7 (same). Therefore, we find that plaintiff's counsel should have spent approximately 1.0 hours each on the "trial" on this date, and we reduce plaintiff's request by 4.0 hours.

Taking these adjustments into consideration, Ms. Dymkar's allowable time for litigating the merits of the case is 353.6 hours. At an hourly rate of $325, this amounts to $114,920.00. In addition, we determined that 10.6 hours of her time were properly billed at the paralegal rate of $100 hour, which amounts to an additional $1,060 in fees. We also determined that we would allow 56.7 hours for Mr. Bowers' time at an hourly rate of $295, which amounts to $16,726.50. Therefore, the lodestar amount for the attorneys' time in this case is $132,706.50.

### C. Paralegal Chantelle Hill

Defendants also object to certain fees for paralegal Chantelle Hill. Plaintiff claims

17

an hourly rate of $125 for Ms. Hill and seeks to recover for 42.4 hours of her time.[3]  This amounts to $5,300.  Again, defendants object to both Ms. Hill's billing rate, as well as her time entries.

Defendants first argue that an hourly rate of $125 is inappropriate for Ms. Hill because plaintiff has failed to demonstrate that Ms. Hill's skills or experience warrant this rate.  Instead, defendants recommend an hourly rate of $75.

We agree with defendants that $125 is not a reasonable hourly rate for Ms. Hill. Although Ms. Hill is a certified paralegal with a bachelor's degree, plaintiff has not provided us with sufficient information (such as Ms. Hill's years of paralegal experience) in order to justify this rate.  Nevertheless, we also find that defendants' suggested hourly rate of $75 is not in accord with recent case law in this District.  Instead, we find that $100 is an appropriate hourly rate for Ms. Hill's work.  *See, e.g., Lee,* 2008 WL 5377798, at *1 (finding that $100 is a reasonable hourly rate for paralegal work); *Goodale,* 2010 WL 2774013, at *4 (finding that $75 is a reasonable hourly rate for paralegal work); *Entertainment Software,* 2006 WL 3694851, at *5 (finding that $100 to $110 was a reasonable hourly rate for paralegals at the law firm of Jenner & Block and plaintiff had established that clients paid these rates); *compare with Delgado,* 2006 WL 3147695, at *6 ($125 was reasonable for paralegal with Ph.D and experience in computer technology); *Thompson*, 2011 WL 2837589, at *6 (same).

---

[3] In plaintiff's Rule 54.3 statement, he lists an hourly rate of $135 for Ms. Hill. However, in plaintiff's Petition and Memorandum in Support [140], he refers to an hourly rate of $125 for Ms. Hill.  Neither party notes this discrepancy.  We will rely on the rate of $125 referred to in the Petition and Memorandum in Support, and assume that the $135 in the Rule 54.3 statement is a typographical error.  Using the hourly rate of $125, plaintiff's total petition for fees is reduced from $224,319.00 to $223,895.00.

Defendants also challenge certain time entries submitted for Ms. Hill's work on plaintiff's case.  First, defendants argue that plaintiff cannot recover fees for 11.9 hours that Ms. Hill purportedly spent preparing three copies of plaintiff's trial exhibit binder because the work should have been handled by a lower level employee.  Defendants are correct that the court should "disallow time spent on 'clerical' or 'secretarial' tasks." *Delgado*, 2006 WL 2147695, at *2.  "The relevant inquiry for a request for paralegal fees is whether the work was sufficiently complex to justify the efforts of a paralegal, as opposed to an employee at the next rung lower on the pay-scale ladder."  *Spegon*, 175 F.3d at 553.  We find that this work was appropriately delegated to a paralegal, rather than a secretary or other lower level employee.  *See, e.g., Top Tobacco, L.P. v. N. Atlantic Operating Co.*, No. 06 C 950, 2007 WL 2688452, at *5 (N.D. Ill. Sept. 6, 2007) (noting that paralegals routinely handle and bill clients for such tasks as searching deposition transcripts for relevant information or preparing binders for depositions). However, we also find that the time Ms. Hill spent on this task was excessive.  Plaintiff's exhibit book included only 22 exhibits, many of which were transcripts or other pleadings, and all of which we presume were used by plaintiff at some other point in this litigation and were therefore readily available.  It is difficult to imagine that compiling these 22 documents into three binders took 11.9 hours.  Instead, we find that 3 hours is an appropriate amount of time to perform this task.

Additionally, defendants argue that plaintiff is not entitled to recover fees for the total time Ms. Hill spent in the courtroom during the trial.  Plaintiff seeks reimbursement for 27.5 hours that Ms. Hill spent in court over the course of the four day trial. Defendants contend that this is excessive and should be reduced by 40%.  Plaintiff

argues that Ms. Hill's presence in court was necessary because she was available to contact plaintiffs and their witnesses and handle all the exhibits. Plaintiff also points out that defendants had three attorneys in attendance at the trial, so it was reasonable for plaintiff to have two attorneys and one paralegal in court. We agree with plaintiff that Ms. Hill's time in the courtroom during trial was not excessive. *See, e.g., Lawyer v. 84 Lumber Co.*, No 96 C 356, 1998 WL 111703, at *1 (N.D. Ill. Mar. 2, 1998) (finding paralegal time in the courtroom was reasonable). Therefore, we will not reduce Ms. Hill's hours for her time at the trial with one exception: we agree with defendants that plaintiff should not be entitled to recover fees for the 3.0 hours Ms. Hill spent waiting for the verdict. *See Warfield*, 733 F. Supp. 2d at 960 (disallowing time spent waiting for the verdict as those hours were not "reasonably expended"); *Thompson*, 2011 WL 2837489, at *7 (same).

Taking these adjustments into consideration, we multiply 30.5 hours by the hourly rate of $100, and find that plaintiff is entitled to recover $3,050 for Ms. Hill's time. Adding this amount to the amount set forth above for the attorneys' time, the final lodestar amount (excluding the time spent on the fee petition) is $135,756.50**.**

### D. Ms. Dymkar's Time Spent Preparing Fee Petition

Blackwell also seeks fees for the work Ms. Dymkar did in preparing the fee petition. (*See* Plaintiff's Motion for An Order Adding to the Attorney's Fee Petition Additional Time Spent on Researching, Preparing, and Defending the Fee Petition and Bill of Costs [172]). "Time spent in preparation of a fee petition is compensable so long as the time spent is not disproportionate to that spent on the merits of the case."

20

*Delgado*, 2006 WL 3147695, at *4. Here, Ms. Dymkar purportedly spent 103.1 hours on the fee petition. Defendants argue that this number of hours is excessive. We agree.

First, "[c]ourts in the Seventh Circuit repeatedly have reduced the amount of time spent in preparation of a fee petition so that that amount is less than 10% (and often below 5%) of the total hours expended in prosecution." *Id.* (collecting cases). Here, Ms. Dymkar and Mr. Bowers spent about 400 hours litigating the merits of this case. Spending 103.1 hours - or roughly 25% - of this time on the fee petition is clearly unreasonable. *Williams,* 2009 WL 383614, at *3 ("courts in the Seventh Circuit have found that devoting fifteen minutes to the petition for every hour spent litigating the case to be excessive.").

In addition, although we are not required to do a line-by-line examination of plaintiff's fees, *Lee,* 2008 WL 5377798*,* at *2, we find that many of Ms. Dymkar's entries for her time on the fee petition are obviously excessive. For example, she purportedly spent 13.7 hours on emails and/or telephone calls with the eight attorneys who submitted affidavits regarding her hourly rate, and on her review of those affidavits. In addition, she spent 2.8 hours on email exchanges or telephone conferences with five other attorneys who did *not* submit affidavits and who are not otherwise mentioned at all in Ms. Dymkar's briefing. Her time entries do not provide any detail on the subject or purpose of these communications. She spent almost 30 hours on legal research in support of the fee petition (3.8 of which were *after* the briefing on her petition was complete), and 32.6 hours actually drafting her opening brief and her reply briefs.[4] We agree with

---

[4] We note that Ms. Dymkar had to draft two separate reply briefs. Her first was 13 pages long, and this Court struck her filing for failure to comply with the Court's order

21

defendants that the majority of this time is excessive.

Finally, courts in this District have allowed plaintiffs to be compensated for considerably less time spent on fee petitions. *See Pasternak v. Radek*, No 07 C 2858, 2008 WL 2788551, at *10-11 (N.D. Ill. Apr. 3, 2008) (where plaintiff spent 46 hours on fee petition, and a total of 199 allowable hours litigating the merits, the court found this ratio of 25% unreasonable and reduced the allowable time to 23 hours); *Delgado*, 2006 WL 3147695, at *4 (where plaintiff spent 1,210.3 allowable hours litigating the case, the court found that 49 hours - a 4% ratio - was a reasonable amount of time to spend on the fee petition).

For these reasons, we will not allow Blackwell to be reimbursed for 103.1 hours for the preparation of the fee petition. Instead, we find that 25 hours is a reasonable amount of time. This amounts to approximately 6% of the time spent litigating the merits of the case through trial and post-trial motions. Blackwell will be reimbursed $8,125 for this time.

### D. Downward Adjustment Based on the *Hensley* Factors

After adjusting the number of hours and the hourly rates, the resulting lodestar for fees is $143,881.50. This does not end our inquiry. "Once the district court reaches an amount using the lodestar determination, it may then adjust that award in light of the

---

limiting her reply brief to 5 pages. Thereafter, she filed a separate reply brief that was 5 pages long, as well as a motion for leave to file her 13 page brief (which we granted). According to her time sheets, Ms. Dymkar spent 8.6 hours on her 13 page reply, and 2.0 hours "draft[ing] 5 page version of reply." She also purportedly spent 2.3 hours drafting her motion for leave to file her 13 page brief, and this motion was less than 4 pages long. We cannot award Ms. Dymkar fees for work incurred as a result of her failure to carefully read court orders.

plaintiff's level of success." *Edwards*, 2009 WL 742871, at *9; *Alcazar-Anselmo*, 2011 WL 3236024, at *7. Thus, the court "has discretion to determine if the lodestar figure represents an excessive amount, but it must exercise this discretion within the framework of *Hensley*." *Alcazar-Anselmo*, 2011 WL 3236024, at *7. In making this determination, a comparison of the amount of attorney's fees requested to the actual damages awarded certainly raises a "red flag" and warrants "increased reflection" in determining whether the lodestar should be reduced. *Anderson v. AB Painting and Sandblasting, Inc.*, 578 F.3d 542, 546 (7th Cir. 2009). However, this disproportional result alone does not support a reduction in fees. Instead, we must determine "whether the hours spent were a reasonable means to that necessary end." *Id.* at 546.

Defendants argue that a 50% reduction is appropriate in this case. We agree that a downward adjustment based on the limited success is appropriate here. In the end, only three (out of six) of Blackwell and Ford's claims went to the jury and only Blackwell recovered a favorable verdict on his two claims. We also note that the jury only awarded him $5,000 on one claim, $0 on the other claim, and the jury declined to award any punitive damages. We do not discount plaintiff's recovery entirely. Blackwell's success vindicated his Constitutional rights and served a public interest. Nevertheless, based on the limited success obtained, and the disproportion between the fees sought and Blackwell's recovery, we reduce the lodestar by an additional 25%. *Delgado,* 2006 WL 3147695, at *7 (applying a 30% reduction where plaintiff only succeeded on one claim, plaintiff was awarded $50,000 despite much higher demand, and attorney's fees requested were $444,830.00); *Alcazar-Anselmo*, 2011 WL 3236024, at *7 (applying a 25% reduction to fees because plaintiff succeeded on only one of the two claims brought

23

to the jury); *compare Edwards,* 2009 WL 742871, at *9 (no downward adjustment where the attorney's fees were $80,000 and the jury awarded plaintiff $29,500 in punitive damages). This results in a fee award of $107,911.13.

### E.  Prejudgement Interest

Plaintiff has also filed a Motion for an Order Granting Interim Attorney's Fees and Prejudgement Interest on Attorney's Fees [171]. Because we are now entering an order on the fee petition, the request for interim fees is denied. With respect to the request for prejudgment interest, defendants do not dispute that plaintiff is entitled to prejudgement interest on his attorney's fees. The only issue is how the prejudgment interest is calculated in this case. Plaintiff argues that he is entitled to prejudgment interest dating back to May 16, 2011, the date on which this Court entered judgment in his favor. Defendants argue that the prejudgment interest should accrue from June 26, 2011, which is thirty days after the date plaintiff submitted his fee petition to defendants.

"The granting of prejudgment interest is within the sound discretion of the district court." *C.W. v. Bd. of Educ. of the City of Chicago*, *Dist. 299*, No. 11 C 2349, 2012 WL 355360, at *11 (N.D. Ill. Feb. 1, 2012). "In cases of violations of federal law, prejudgment interest should be presumptively available because without it, compensation is incomplete and the defendant has an incentive to delay." *Id.* "Prejudgment interest typically accrues from the date of loss or the date on which the claim accrued in order to put a party in the position it would have been had it been paid immediately." *Id.* In other words, "prejudgment interest begins to accrue at the time payment was due." *Brenton H. v. Board of Educ. of City of Chicago*, No. 10 C 1360,

2011 WL 4501408, at *6 (N.D. Ill. Sept. 28, 2011).

We agree with defendants that prejudgment interest in this case should accrue thirty days after the petition for fees was submitted. This date seems appropriate because, as several other courts in this District have held, "it is reasonable for the [City] to have time to review plaintiffs' fee petitions, like a client would have, without being charged interest." *C.W.*, 2012 WL 355360, at *12 (holding that prejudgment interest should accrue thirty days after fee petition was filed); *Judah v. Bd. of Educ. of the City of Chicago, Dist. 299,* 798 F. Supp. 2d 942, 953-54 (N.D. Ill. 2011) (same). Therefore, the prejudgement interest for the allowable fees in plaintiff's fee petition ($99,786.13) should accrue on June 26, 2011. Prejudgment interest for the fees in plaintiff's motion to supplement his fee petition ($8,125) should accrue on 01/22/12, which is thirty days from the date that motion was filed. *Judah,* 798 F. Supp. 2d at 953-54 (prejudgment interest on amount initially requested accrued 30 days from date of first petition; prejudgment interest on fees in supplemental petition accrued 30 days from the date of supplemental petition).

## III.    Conclusion

For the foregoing reasons, we grant Blackwell's petition in part and award him $107,911.13 in fees, plus prejudgment interest.

ENTERED:

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:        February 13, 2012**

25